# UNITED STATES DISTRICT COURT
for the
Middle District of North Carolina

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>ONE NAVY BLUE APPLE IPHONE LOCATED AT 1801 STANLEY RD ROOM 300 GREENSBORO, NC | ) ) ) ) ) ) Case No. 1:24MJ193-1 |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Middle _____ District of _____ North Carolina _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to possess with intent to distribute a controlled substance |
| 21 U.S.C. § 841(a)(1) | possession with the intent to distribute a controlled substance |

The application is based on these facts:
See attached affidiavit

☐ Continued on the attached sheet.
☐ Delayed notice of ____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Benjamin L. Crocker
*Applicant's signature*

Benjamin L. Crocker, SPECIAL AGENT, ATF
*Printed name and title*

On this day, the applicant appeared before me via reliable electronic means, that is by telephone, was placed under oath, and attested to the contents of this Application for a search warrant in accordance with the requirements of Fed. R. Crim. P. 4.1.

Date: 05/20/2024  11:54 am

*Judge's signature*

City and state: Durham, North Carolina

United States Magistrate Judge Joe L. Webster
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Special Agent Benjamin L. Crocker, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. Currently, I am investigating the drug distribution activities of STEVEN CURTIS WILLIAMS, JR. in the Middle District of North Carolina. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of multiple electronic devices which are currently in law enforcement possession, and the extraction from the devices of electronically stored information described in Attachment B.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and have been so employed since August 2019. I am a graduate of the Federal Law Enforcement Training Center ("FLETC") Criminal Investigator Training Program, as well as the ATF National Academy, where I received extensive training in the investigation of firearms, controlled substances, arson, and explosives offenses. I have participated in investigations involving all these areas. Prior to my career with ATF, I worked for the South Carolina Highway Patrol in South Carolina for approximately 6 years. During my tenure with the South Carolina Highway

Patrol, I served as a Patrolman, Advanced Special Response Team member and on the Criminal Interdiction Team. During my career in law enforcement, I have been involved in numerous complex case investigations involving federal or state firearms and controlled substance violations. Prior to my career in law enforcement, I attended The Citadel and graduated in 2013 with a Bachelor of Arts Degree in Criminal Justice.

3. I am familiar with the ways in which narcotics traffickers conduct their business, including, but not limited to, their methods of acquiring and distributing narcotics, their use of telephones, and their use of code and slang words to conduct their transactions. I am familiar with practices used by traffickers involving the collection of proceeds of narcotics trafficking and methods of money laundering used to conceal the nature of the proceeds. I am also familiar with the common practice among narcotics traffickers to carry multiple phones and dispose of phones frequently to evade law enforcement detection of their illegal activities. I have conducted and assisted with numerous investigations regarding the unlawful possession, use, and distribution of narcotics during my law enforcement career. As a law enforcement officer, I have used and/or participated in a variety of methods investigating firearm and drug related crimes, including, but not limited to, electronic and visual surveillance, witness interviews, the use of search

warrants, the use of confidential informants, the use of pen registers/trap and trace devices, mobile tracking devices, and the use of undercover agents.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

5. The property to be searched shall be referred to as the "**TARGET DEVICE 1**." **TARGET DEVICE 1** is a Navy Blue Apple iPhone. A photograph of the **TARGET DEVICE 1** has been attached to this application for further identification.

6. **TARGET DEVICE 1** is currently located at the ATF Greensboro Field Office in Greensboro, NC.

7. The applied-for warrant would authorize the forensic examination of the **TARGET DEVICE** for the purpose of identifying electronically stored data particularly described in Attachment B.

# PROBABLE CAUSE

8. On November 13, 2023, ATF SA's and TFO's conducted an undercover operation, in which an ATF Confidential Informant[1] (CI) purchased approximately one pound of suspected methamphetamine from Daquan Moses in Winston-Salem, NC.

9. TFO La Valley and TFO VanKuren met with the CI at a predetermined location and searched their person and the CI vehicle (CIV), no contraband was located.

10. TFO La Valley instructed the CI to drive to 3501 S. Main Street (Family Dollar) to meet with Moses regarding the purchase of one pound of methamphetamine. Moses had agreed to drive the CI to a source of supply for methamphetamine.

11. During the controlled purchase, the CI was equipped with audio/video recording equipment. The surveillance units, observed and heard the following, transmitted via the surveillance recording equipment worn by the CI and via ATF radio. Additionally, surveillance was maintained at 337 Strickland Avenue, Winston-Salem, NC during the duration of the operation.

12. At approximately 3:52 p.m., Moses is seen exiting the front of 337 Strickland Avenue and getting into the Toyota Camry (New Jersey

---

[1] The CI has a known criminal history and is a paid confidential informant.

Registration T41RYL). Moses is then seen by officers driving down Strickland Avenue to the intersection of Strickland Avenue and S. Main Street and pulling into the parking lot of 3501 S. Main Street.

13. At approximately 3:54 p.m., the CI exited the CIV and sat in the front passenger seat of Moses's Toyota Camry. Moses, then drove the Toyota Camry out of the parking lot, south on S. Main Street and then east onto Clemmonsville Road. Moses, then drove north on US 52, exiting on US-421 southbound and exited off the Lowery Street exit. Moses, then drove to Hicks Street and parked.

14. During the drive to Hicks Street, Moses was on the phone with an unknown subject. Moses asked the male subject, "Where the hell you at bro?" which the male responds, "Over here on Silas Creek. I had to find someone to go damn weigh this shit." The male subject on the phone then talked about how he could not get off work, which was the reason the methamphetamine was not available earlier. The subject then stated, "I gotta get off work, go all the way to the west side, grab the shit and then meet you bro." The phone call ended at approximately 3:57 p.m.

15. At approximately 4:01 p.m., the CI asked Moses if the "clear be good from old buddy," which Moses confirmed stating it was one of his "homies." Moses then received an incoming phone call, and upon answering it he requested the unknown subject on the other line to send him their location.

Moses then told the subject to meet on the same street "as last time" and that Moses was currently on Lowery Street.

16. At approximately 4:03 p.m., Moses parked his vehicle in the 100 block of Hicks Street, Winston-Salem, NC. Moses then exited the vehicle and met with the source of supply.

17. At approximately 4:06 p.m., Moses returned to his vehicle and provided the CI with the suspected methamphetamine. The CI then provided Moses with two thousand, two hundred dollars of ATF Agent Cashier Funds. Moses then began driving the vehicle from the area.

18. At approximately 4:21 p.m., Moses arrived at 3501 S. Main Street, where he dropped the CI off. The CI then entered the CIV. Moses was observed leaving the parking lot, driving onto Strickland Avenue.

19. At approximately 4:22 p.m., Moses arrived back at 337 Strickland Avenue and went into the residence.

20. At approximately 4:33 p.m., the CI met with TFO La Valley and TFO VanKuren at a predetermined location. TFO La Valley collected the purchased narcotics and the CI/CIV was searched, no contraband was found. The narcotics field-tested positive for methamphetamine and were placed in the ATF Greensboro vault for storage. The approximate weight of the methamphetamine was 476 grams.

21. During the month of November 2023, TFO La Valley reviewed phone toll history for Moses related to the November 13, 2023, controlled buy. During the review, TFO La Valley was able to locate phone calls that were consistent with the times in which Moses was making and receiving phone calls during November 13, 2023, which was the date of the controlled buy with the CI in the vehicle with him. The CI entered Moses's vehicle at approximately 3:54 p.m.

22. TFO La Valley observed that Moses had an incoming phone call from a subject using phone number (743) XXX-XXXX, at approximately 3:53 p.m.. TFO La Valley observed, while reviewing the audio/visual surveillance from the controlled purchase, the CI entered Moses's vehicle and Moses can be heard on the cell phone (which was on speaker phone) asking, "You already got it?" and the person responded, "Yeah. I just grabbed it." Moses responded, "Alright I'm about to pull up." The phone call ended shortly thereafter.

23. TFO La Valley, while still reviewing audio/visual surveillance from the controlled purchase, observed Moses receiving an incoming phone call at approximately 4:01 p.m., again to the same number (743) XXX-XXXX. This was consistent with both the phone tolls and the video surveillance. During this phone call, Moses asked the subject to send him their "direct location" and to "come to the same street as last time" and also stated he was on Lowery Street. From the video surveillance, TFO La Valley observed Moses then park

on Hicks Street and stated, "I had to scope this shit out," because police were in the area on a previous occasion. TFO La Valley observed Moses leave the vehicle, then Moses met a black male described by the CI as being light skinned, possibly in his 30's, with short hair. The CI also described that subject's vehicle as being a green in color Dodge SUV.

24. Based on toll history and reviewing the video/audio surveillance, TFO La Valley believed the subject associated with the above-referenced number (743) XXX-XXXX to be the supplier of the approximately one pound of methamphetamine. TFO La Valley queried the phone number referenced above (743) XXX-XXXX through a local police database, which revealed the phone number to be associated with STEVEN CURTIS WILLIAMS, JR.

25. TFO La Valley was familiar with WILLIAMS due to a previous firearm related investigation involving WILLIAMS. TFO La Valley knew WILLIAMS to be a convicted felon and observed that he was currently on probation.

26. On November 20, 2023, TFO La Valley contacted NCDPS P.O. Michael Norman and asked P.O. Norman if he could query a phone number through their system. TFO La Valley provided P.O. Norman the above referenced phone number (743) XXX-XXXX, which P.O. Norman advised their system showed it to belong to WILLIAMS and confirmed he is currently on supervised probation for Possession of Firearm by Felon.

27. TFO La Valley, then contacted P.O. Mitchell Hampton (WILLIAMS' supervising probation officer) and P.O. Hampton advised TFO La Valley that WILLIAMS was on an ankle monitor. TFO La Valley asked P.O. Hampton if WILLIAMS was wearing his ankle monitor on November 13, 2023, which P.O. Hampton confirmed. TFO La Valley asked P.O. Hampton where WILLIAMS was at approximately 4:01 p.m. on November 13, 2023, which P.O. Hampton advised WILLIAMS appeared to have just arrived at 1st Street and Hicks Street in Winston-Salem, NC. This is the same location as the transaction for methamphetamine had occurred. TFO La Valley asked where WILLIAMS had come from immediately prior to and went to immediately following the transaction. P.O. Hampton advised WILLIAMS ankle monitor showed him to come from 212 Miami Avenue, Winston-Salem, NC, immediately prior to traveling to Hicks Street, and then after the transaction WILLIAMS went back to 212 Miami Avenue.

28. TFO La Valley, as previously mentioned, is familiar with WILLIAMS due to a previous firearm related investigation. WILLIAMS was previously interviewed by TFO La Valley, and it was determined that 212 Miami Avenue is the address for his mother, Yvonne Branda Carter.

29. TFO La Valley contacted the CI and showed the CI an image of WILLIAMS, which the CI confirmed WILLIAMS was the subject who provided

Moses the methamphetamine that the CI subsequently purchased during controlled purchase on November 13, 2023.

30. The methamphetamine purchased from Moses and WILLIAMS was sent to the DEA Laboratory for testing. The results yielded the substance to be 445.9 grams of methamphetamine hydrochloride with a purity of 93%.

31. On May 9, 2024, WILLIAMS was arrested by Winston-Salem Police Department for an outstanding Federal arrest warrant issued in the Middle District of North Carolina. **TARGET DEVICE 1** was located on WILLIAMS during his arrest.

## TECHNICAL TERMS

32. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include:

storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

33. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

34. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **TARGET DEVICE** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **TARGET DEVICE** because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a cellular telephone is evidence may depend on other information stored on the cellular telephone and the application of knowledge about how a cellular telephone behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

35. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **TARGET DEVICE** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the **TARGET DEVICE** to human inspection in order to determine whether it is evidence described by the warrant.

36. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

Based on the preceding information, there is probable cause to believe that the named items and information more fully described in Attachment B, constituting evidence or fruits of violations of 21 U.S.C. §§ 846 and 841(a)(1) will be found in the **TARGET DEVICE** more fully described in Attachment A.

/S/ BENJAMIN L. CROCKER
Benjamin L. Crocker, Special Agent
Bureau of Alcohol, Tobacco,
Firearms and Explosives

Dated: May 20, 2024  11:54 am

Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant appeared before me via reliable electronic means (telephone), was placed under oath, and attested to the contents of this written affidavit.

Honorable Joe L Webster
United States Magistrate Judge
Middle District of North Carolina

# ATTACHMENT A
*Property to be searched*

The property to be searched is as follows:

a. **TARGET DEVICE 1**: a navy blue Apple iPhone



**TARGET DEVICE 1** is currently located at the ATF Greensboro Field Office in Greensboro, NC

This warrant authorizes the forensic examination of **TARGET DEVICE 1** for the purpose of identifying the electronically stored information described in Attachment B.

# ATTACHMENT B

1. All records on the **TARGET DEVICE** described in Attachment A regarding violations of 21 U.S.C. §§ 846 and 841 (conspiracy to possess with the intent to distribute a controlled substance and possession with the intent to distribute a controlled substance); and involve WILLIAMS in the form of:

   a. Electronic communications between WILLIAMS and others regarding controlled substances.

   b. lists of customers and related identifying information regarding the possession or distribution of controlled substances;

   c. information describing or depicting the types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   d. any information related to sources of controlled substances (including names, addresses, phone numbers, or any other identifying information);

   e. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the **TARGET DEVICE** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.